KATHLEEN M. LABONTE vs. DOMINIC GIORDANO.

Worcester. November 10, 1997. - December 19, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Actionable Tort. Devise and Legacy,* Expectancy, Personal property, Real property.

This court declined to recognize a new cause of action that would allow a claim for tortious interference with an expectancy of receiving a legacy to be commenced while the prospective testator is alive. [322-323]

A civil action was remanded to allow the plaintiff to amend her complaint to allege any claims arising out of the same circumstances that became available during the pendency of the plaintiff's appeal from the judgment below. [323]

CIVIL ACTION commenced in the Superior Court Department on June 27, 1996.

The case was heard by *Herbert F. Travers, Jr.,* J., on a motion to dismiss.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Morris A. Bergman* for the plaintiff.

*Philip K. Maloof* for the defendant.

IRELAND, J. The plaintiff, Kathleen M. Labonte, filed a civil complaint against her brother, the defendant, Dominic Giordano, for tortious interference with an expectancy. Giordano moved to dismiss the complaint, pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), for failure to state a claim upon which relief can be granted. A judge in the Superior Court granted Giordano's motion. We transferred Labonte's appeal here on our own motion, and now vacate the judge's order and remand the case to the Superior Court in order to grant leave to Labonte to amend her complaint consistent with this opinion.[1]

1. *Facts.* Labonte and Giordano are the only children of Mar-

---

[1]Because of our disposition of this case, we need not reach the second issue raised on appeal, namely whether the judge erred in concluding that Labonte

tha Giordano (Martha). Labonte is a New Jersey resident. Giordano lives in Framingham. At the time this case began, Martha was living in a nursing home in Worcester. She died during the pendency of this appeal.

Labonte makes the following allegations.[2] For the past several decades, Labonte cared for Martha's needs, often at Labonte's own expense. Sometime prior to July, 1992, Martha executed a will and several subsequent codicils naming Labonte as the sole taker under Martha's will. Shortly before July, 1992, Giordano, who had had little or no contact with Martha for at least twenty years, learned of the contents of Martha's will. At that time, her estate consisted primarily of her former home in Shrewsbury, antique furniture, jewelry, and a savings account.

Giordano then began to visit Martha regularly. During this time, he refused to allow other family members (including Labonte) to speak to Martha, or have any contact with her. Giordano made false statements to Martha about Labonte, including statements that Labonte had stolen money and other articles from Martha. Martha was elderly and in a declining state of health, both physically and mentally.

Giordano repeatedly asked Martha to change her will and told her that he would stop visiting if she did not do so. On or about July 1, 1992, Martha gave Giordano her power of attorney, authorizing him, without limit, to handle all her financial affairs, including the power to divest her assets at his sole discretion. On December 8, 1992, Giordano caused Martha to transfer her former home in Shrewsbury to him.

2. *Discussion.* Labonte argues that we should recognize a new cause of action that would allow a claim for tortious interference with an expectancy of receiving a legacy to be commenced while the donor[3] is alive. Both parties agree that we have not previously permitted such a cause of action. However, we have long recognized a cause of action for tortious interference with the expectancy of receiving a gift in certain limited conditions. The defendant must intentionally

did not make a prima facie showing of the type of unlawful conduct necessary for tortious interference with an expectancy.

[2]Because of the disposition of the claim under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), Giordano did not file an answer to Labonte's complaint.

[3]For the sake of convenience, we shall refer to the person whose property is subject to the alleged tortious interference as the donor, regardless of whether that person is still alive or has died.

interfere with the plaintiff's expectancy in an unlawful way.[4] See *Ross* v. *Wright*, 286 Mass. 269, 271 (1934); *Hegarty* v. *Hegarty*, 52 F. Supp. 296, 301 (D. Mass. 1943). The plaintiff must have a legally protected interest. See *Ross* v. *Wright*, *supra*. The plaintiff must show that the defendant's interference acted continuously on the donor until the time the expectancy would have been realized. See *Ross* v. *Wright*, *supra* at 274; *Lewis* v. *Corbin*, 195 Mass. 520, 527 (1907); *Hegarty* v. *Hegarty*, *supra* at 301.

This final condition serves three functions. First, it shows that the defendant's interference was the legal cause of damage to the plaintiff. See *Ross* v. *Wright*, *supra* at 274; *Lewis* v. *Corbin*, *supra* at 524-527. Second, it ensures that the donor had no opportunity before the expectancy would have been realized to overcome the defendant's interference and to dispose of the property otherwise. *Lewis* v. *Corbin*, *supra* at 527. Third, it necessarily implies that a cause of action cannot arise for tortious interference with the expectancy of receiving a legacy until the donor's death, because any such expectancy would only be realized at that time.

The judge correctly identified the elements of the cause of action. The judge then concluded that, because Martha was still alive at that time, "it is impossible . . . to determine whether the influence allegedly exerted by the defendant will continue until the death of his mother, a necessary element in this type of claim. Because this action is not yet ripe, the complaint based on this cause of action must fail." This is a correct statement of the state of the law in the Commonwealth.

Labonte, however, urges us to modify the law and follow the holding in *Harmon* v. *Harmon*, 404 A.2d 1020 (Me. 1979). In that factually similar case, the Supreme Judicial Court of Maine noted that "where a person can prove that, but for the tortious interference of another, he would in all likelihood have received a gift . . . he is entitled to recover for the damages thereby done to him." *Id.* at 1024. The *Harmon* court then explicitly recognized that it was extending existing law in concluding that "we go one step further [and] recognize that one may proceed to enforce this liability, grounded in tort, before the death of the prospective testatrix occurs." *Id.* at 1025.

According to the *Harmon* court, the injury to the prospective

---

[4]Unlawful means include duress, fraud, or undue influence. See *Hegarty* v. *Hegarty*, 52 F. Supp. 296, 300 (D. Mass. 1943).

legatee is not the loss of the property itself, but the loss of the expectancy. *Id.* The expectancy arises on the execution of the will. *Id.* at 1022. The wrongful conduct of the third party completes the injury. *Id.* at 1022-1023. The *Harmon* court noted that valuation of the injury would "present serious evidentiary difficulties," but that these difficulties did not destroy the right to be protected from wrongful interference. *Id.* at 1023.

The *Harmon* court stated several policy reasons for its extension of the law, notwithstanding the "ambulatory" and "voidable" nature of the plaintiff's expectancy in receiving a devise. *Id.* at 1025. These policy reasons included the availability of witnesses while their memories were relatively fresh and, especially in that particular case, the availability of the testimony of the donor herself. *Id.*

We agree with the *Harmon* court that, *supra* at 1022-1023, in situations such as those that confront us in the instant case, the injury from the wrongful conduct of a third party is not solely to the donor. See *Lewis* v. *Corbin, supra* at 525. If Labonte's allegations are true, she has been injured by Giordano's actions, at least to the extent that the probability that she would have taken the house (and possibly other property) under Martha's will has been reduced. See *Lewis* v. *Corbin, supra* at 526; *Harmon* v. *Harmon, supra* at 1022-1023; W.L. Prosser & W.P. Keeton, Torts § 130, at 1007 n.25 (5th ed. 1984).

However, we remain unpersuaded by the conclusions in the *Harmon* opinion and decline to recognize a new cause of action that Labonte seeks here. There are sufficient remedies available under current law and Labonte has not presented sufficient reasons for expanding those remedies by creating a new cause of action. For example, while Martha was living, Labonte could have petitioned the court to appoint a guardian for Martha. The guardian then could have brought suit against Giordano to set aside any asset transfers resulting from his alleged wrongful conduct. See *Lombard* v. *Morse*, 155 Mass. 136 (1891). Similarly, now that Martha has died, the executor or administrator of her estate could sue Giordano under G. L. c. 230, § 1, to recover for any wrongful actions against Martha to the same extent that she could have sued Giordano during her lifetime. If the executor or administrator of Martha's estate was unwilling to bring such suit (for example, if Giordano is the executor or administrator), Labonte could still sue Giordano on behalf of the estate under G. L. c. 230, § 5, without having to remove the

executor or administrator. See *Samia* v. *Central Oil Co. of Worcester*, 339 Mass. 101, 111 (1959). Further, Labonte may be able to contest any will that is filed for Martha under such traditional grounds as duress, fraud, or undue influence. However, because the house apparently was Martha's most substantial asset, a will contest, even if successful, would not provide the degree of relief that Labonte is seeking.

The policy reasons that the *Harmon* court used to justify the recognition of a new cause of action also are not persuasive. As Giordano argues, an individual bent on tortious acts of interference may carry out such acts over a period of months, if not years, such that witnesses may no longer be available or have fresh memories of the events. See *Holt* v. *First Nat'l Bank*, 418 So. 2d 77, 79-81 (Ala. 1982) (dismissing claim of tortious interference with expectancy of receiving legacy because of failure to state cause of action where alleged unlawful conduct occurred more than fifteen years prior to filing of claim and alleged tortfeasor had died). Further, even testimony from Martha herself may have been of doubtful value here, given Labonte's allegation that Martha's mental health was questionable. Only one other jurisdiction appears to have followed the *Harmon* court and recognized the cause of action that Labonte urges us to adopt. See *Carlton* v. *Carlton*, 575 So. 2d 239, 241 (Fla. Dist. Ct. App. 1991). In that case, however, the court was heavily influenced by the fact that, under Florida law, the plaintiffs would have had no remedy if the court had not recognized the new cause of action. *Id.* at 241-242. That situation does not exist under our law.

The judge did not commit error. Nonetheless, because of Martha's death during the pendency of this appeal, we vacate the judgment below and remand the case so that Labonte may amend her complaint consistent with this opinion.

*So ordered.*