Leibensperger, Edward P., J.
Alleged misconduct by lawyers and a financial advisor to cause a 91-year-old , infirm woman to execute a new will six days before she died resulted in disputes over the distribution of her $12 million estate. The disputes among the possible heirs were, ultimately, settled by a compromise agreement. The probate court approved that agreement by a Decree and Order of Compromise. Now three of the heirs, who were parties to the compromise agreement, sue the lawyers and the financial advisor for intentionally and tortiously interfering with their expected inheritance (Civil Action No. 2016-0724). The three heirs claim they would have received a much larger inheritance than what they obtained through the compromise agreement but for the conduct of defendants. Also, the personal representative of the estate sues the same defendants to recover the legal fees paid by the estate on behalf of all the heirs, incurred as a result of the litigation, allegedly caused by defendants’ conduct, over the distribution of the estate (Civil Action No. 2016-0722).
Defendants move to dismiss all claims contending that (a) this court lacks subject matter jurisdiction over plaintiffs’ claims as a result of the proceedings in the probate court, and (b) the complaints fail to state a claim upon which relief may be granted. [1]
BACKGROUND
The following facts are taken from the complaints. For the purposes of these motions, the factual allegations, and reasonable inferences therefrom, are taken as true. Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011).
Events Surrounding Execution of Will and Trust
In 2013, Nathalie Rothblatt was a 91-year-old widow. On March 7,2013, Rothblatt fell and broke her hip. She was taken to Beverly Hospital. At that time she suffered various other ailments such as chronic congestive heart failure, kidney failure and low blood pressure. She suffered from severe pain from the broken hip, as well as dizziness and difficulty concentrating. She was placed on medication including morphine and dopamine that affected her cognition. During her hospitalization she suffered bouts of disorientation, delusions, and confusion. She did not recover. On March 20, 2013, she died.
Rothblatt did not have children. She was predeceased by her husband, William Rothblatt, and her brother Sidney Berkowitz. She was survived by her brother, Henry Berkowitz. In addition, her family consisted of the children of Sidney Berkowitz, plaintiffs in this case, Elliot, Steven, and Esther Berkowitz (the “Berkowitz Siblings”). She was also survived by her first cousin, Ralph Edelstein, and his wife, Eileen Edelstein.
The following events occurred during Rothblatt’s two-week hospitalization prior to her death. Ralph and Eileen Edelstein visited Rothblatt. They observed that her prognosis was poor. Ralph Edelstein contacted defendant, Matthew Williams, a financial adviser employed by defendant, RBC Capital Markets, LLC (“RBC”). RBC had acted as a financial adviser to Rothblatt for several years, although Williams had only recently become the person responsible for her account. At the time of her death, Rothblatt possessed assets worth approximately $12 million. Her account at RBC was worth approximately $9 million. Her account was Williams’ largest account for which he was responsible.
Williams visited Rothblatt at the hospital on March 12, 2013. He commenced a discussion with her about her estate planning. Williams knew that Rothblatt did not want to leave any portion of her estate to her surviving brother, Hemy Berkowitz. At the hospital in March 2013, Williams told Rothblatt that she needed to execute a new estate plan because if she did not her estate would go to Hemy Berkowitz. The complaint alleges that Williams’ statement was false and was made recklessly or intentionally to induce Rothblatt to agree to a hastily constructed estate plan, orchestrated by Williams.
According to Williams, Rothblatt told him that she wanted to execute a new will that would include as legatees Ralph and Eileen Edelstein, and two of the three Berkowitz Siblings, Steven and Elliot. According to Williams, Rothblatt also stated that she wanted to give a large portion of her estate to him, Williams. Williams then selected a friend, defendant Bradley Cook, an attorney at defendant Taylor Ganson & Perrin LLP (“Taylor Ganson”), to draft a new will and trust. Rothblatt had no previous association with Cook or with the law firm.
Based on what Williams told Cook, a new will and trust were drafted. Cook was assisted in the drafting of the new will and trust by defendant, Michael Starr. Without ever having met or conversed with Rothblatt, Cook and Starr drafted the estate plan and then went to Rothblatt’s hospital room, accompanied by Williams, on March 14, 2013. At that time, Rothblatt executed the documents. The estate planning documents drafted by Cook and Starr included a devise to Williams and his family of assets worth over $2 million. In addition, the documents provided that Taylor Gan-son act as trustee of a well-funded trust. The trust was drafted such that it would have a very long life, which would generate significant fees for the trustee law firm.
The execution of the documents at the hospital occurred without the presence of anyone from Rothblatt’s family, of any other independent -person. No evaluation of Rothblatt’s competence to execute the documents was performed, even though it was alleg *58 edly obvious that she was impaired. Neither Cook nor Starr had any conversation with Rothblatt to ascertain her intentions. Rothblatt signed the documents without reading them. Concerned that Rothblatt would die before they could complete the estate plan, Williams, Cook and Starr took extraordinarily steps to make sure the documents were executed that day, before Rothblatt was scheduled for major surgery. The complaint alleges that Rothblatt lacked the capacity to create a new estate plan and that fact was known or should have been known to defendants.
According to the complaint, Cook took the executed documents back to his office in Boston. There, he pressured an employee of the law firm to notarize Rothblatt’s signature on the documents, although the notary had not been present at the hospital and did not, in fact, witness Rothblatt’s signature.
The Prior Will
In 1961, Ralph Edelstein’s law firm prepared a will for Rothblatt. Rothblatt executed the will on December 29, 1961. The will left her household furniture and tangible personal property to Ralph Edelstein. All the rest and residue of her estate was devised to her brother, Sidney Berkowitz, and if he predeceased her (as he did) to his issue, per stirpes. Those issue are the plaintiffs, the Berkowitz Siblings. Rothblatt’s other brother, Henry Berkowitz, was not named as a legatee of her will. Ralph Edelstein was named as the executor of this 1961 will.
Litigation After Rothblatt’s Death
When the family members of Rothblatt learned, after her death, of the hastily arranged new will and trust, they were shocked and upset. When they complained to RBC and Taylor Ganson, both firms quickly determined that their employees and the firms must disclaim their beneficial interests in the will and withdraw from representation. Williams formally waived his rights under the will. The law firm resigned as trustee. The validity of the new will and trust, however, remained clouded by defendants’ conduct. Disputes between and among family members based upon the validity of the 1961 will and the allegedly tainted 2013 will ensued. Each of the family members retained separate legal counsel.
A Petition for Probate of the 2013 will was filed in the Probate and Family Court in Essex County. Plaintiff, Stephen Hanna, was appointed personal representative of the Estate of Nathalie Rothblatt (the “Estate”). Extensive litigation took place regarding the validity of the 1961 and the 2013 wills. In 2014, the parties reached a settlement. Pursuant to the settlement, the Berkowitz Siblings received 71 percent of the estate rather than the 100 percent they otherwise would have received, under the 1961 will. The Berkowitz Siblings also allege that they suffered significant emotional distress from the experience of the dispute and litigation.
Pursuant to the settlement, Stephen Hanna obtained the approval of the probate court to pay the legal fees and costs incurred by all the litigants in the probate court litigation out of the Estate assets. The amount of legal fees paid by the Estate as a result of the litigation was approximately $1,240,000.
The following are additional facts in the record provided by the Affidavit of Debra Squires-Lee. The Affidavit submits “true and accurate” copies of documents from the Probate and Family Court in the matter of the Estate of Nathalie Rothblatt, Docket No. ES13P1055EA. The probate court documents are submitted in support of defendants’ motions to dismiss on the premise that (a) upon a motion to dismiss for lack of jurisdiction the court may consider materials outside the complaint, Audoire v. Clients’ Security Board, 450 Mass. 388, 390 n.4 (2008), and (b) this court may take judicial notice of public documents from another court. Plaintiffs do not contest or object to the consideration of the documents from the probate court.
In the probate court, Edelstein petitioned for probate of the 2013 will. The Berkowitz Siblings objected and challenged the 2013 will in favor of the 1961 will. Hemy Berkowitz objected to both wills. The objectors to the 2013 will alleged that the will was procured by undue influence over Rothblatt and that Rothblatt did not understand or comprehend the implications of what she was doing by signing the 2013 documents. After a significant amount of litigation activity, the parties to the probate court proceeding entered into a settlement. A Compromise Agreement, dated August 5, 2014, was submitted to the court.
The Compromise Agreement references the disputes regarding the 1961 will and the 2013 will, but does not state a conclusion as to which is the valid will. The Agreement provides for a compromise whereby each of the contestants receives a percentage of the residue of Rothblatt’s estate. Thus, Ralph and Eileen Edelstein received 19 percent, Steven Berkowitz received 24 percent, Elliot Berkowitz received 29 percent, Esther Berkowitz received 18 percent, and Hemy Berkowitz received 10 percent of the estate. The Compromise Agreement also attaches and incorporates a “Compromise Last Will and Testament of Nathalie Rothblatt” to describe the settlement agreement.
The parties submitted the Compromise Agreement and the Compromise Last Will and Testament of Nathalie Rothblatt to the probate court for approval. On August 7, 2014, the court entered a Decree and Order of Compromise. The Decree approved the Compromise Agreement. No finding was made in the Compromise Agreement or in the Decree regarding the validity or invalidity of the 1961 will or the 2013 will. Also, on August 7, 2014, the court entered a Decree and Order of Petition for Formal Adjudication. In that Decree, the probate court formally “admitted to Pro *59 bate” the Compromise Last Will and Testament of Nathalie Rothblatt.
The Compromise Agreement also provides that the Estate shall pay the costs of litigation and attorneys fees incurred by each party in connection with the subject matter of the Compromise Agreement. The parties agreed to the amounts of costs and attorneys fees submitted by each party to Hanna and directed Hanna to pay those costs. The probate court approved the Compromise Agreement.
Finally, the Compromise Agreement provides, in paragraph 11, that “Stephen J. Hanna, after consultation with the Parties’ attorneys, will consider what actions, if any, are to be taken with respect to any claims that the Estate of Nathalie Rothblatt may have against (i) Taylor Ganson & Perrin, LLP, Bradley R. Cook, Michael J. Starr, and any other attorneys or employees; and (ii) RBC Capital Markets, RBC Wealth Management, Matthew R. Williams, and any other employees, including the option of filing a petition with the Probate Court for instructions as to how to handle any potential claims.”
DISCUSSION
A. First Amended Complaint of the Berkowitz Siblings (Civil Action No. 2016-0724)
The First Amended Complaint asserts eight counts for relief against defendants.[2] Count VI, entitled ‘Tor-tious Interference With An Expectancy” is, upon analysis, the principal theory asserted by plaintiffs for recovery. In that Count, the Berkowitz Siblings allege that defendants intentionally, through duress, fraud and undue influence, interfered with their expected inheritance from Rothblatt. Because this theory is most directly implicated by defendants’ motion to dismiss for lack of jurisdiction, it will be discussed first. Thereafter, the motions to dismiss all counts will be discussed.
1. Motion to Dismiss for Lack of Jurisdiction
Defendants do not contest that the superior court has general jurisdiction to hear tort claims seeking money damages. G.L.c. 212, §3. Instead, defendants argue that only the probate court has jurisdiction over a will contest and the claim by the Berkowitz Siblings is, in essence, a will contest. In addition, defendants contend that to allow the Berkowitz Siblings to proceed in superior court would constitute a collateral attack on the decrees of the probate court entered as a result of the Compromise Agreement. Consequently, all of the claims of the Berkowitz Siblings should be dismissed for lack of subject matter jurisdiction.
Defendants concede that there is no Massachusetts precedent directly on point as to whether a tortious interference with inheritance claim may proceed when it involves litigation about the testator’s intent and there has been an adjudicated will contest. They note, however, that G.L.c. 215, §3 provides that the probate court shall have “jurisdiction of probate of wills" and in a case decided before the statute just mentioned, the Supreme Judicial Court held that the probate court had “separate and exclusive jurisdiction” over wills. Peters v. Peters, 62 Mass. (8 Cush.) 529, 539 (1851).[3] Because, according to defendants, the Berkowitz Siblings must prove the validity of the 1961 will, and the invalidity of the 2013 will, in order to succeed on their claim of tortious interference, there is no jurisdiction in the superior court to revisit what has been resolved in the probate court.
To analyze defendants’ arguments, the elements of the tort of interference with an expected inheritance must be examined. According to the Supreme Judicial Court in Labonte v. Giordano, 426 Mass. 319, 320-21 (1997), “we have long recognized a cause of action for tortious interference with the expectancy of receiving a gift in certain limited conditions. The defendant must intentionally interfere with the plaintiffs expectancy in an unlawful way.” Id. “Unlawful means include duress, fraud, or undue influence.” Id. at note 4. The tort is also recognized in the Restatement (Second) of Torts, §774B (1979) (“One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift”). Massachusetts appears to join with the majority of states in recognizing the tort.
In Labonte, the Court was addressing an alleged interference by a wrongful act when the donor was still alive that substantially diminished an inheritance expected at the donor’s death. There was no dispute regarding the validity of a will. A much earlier case, cited as precedent in Labonte, comes closer to the facts of this case. In Lewis v. Corbin, 195 Mass. 520, 527 (1907), the interference was the fraudulent failure by the defendant to obtain the proper signatures to a codicil to make the gift in the codicil effective. Thus,' to succeed, Lewis had to prove that the intent of the donor as shown by the codicil should be enforced. Lewis asserted his claim in a separate tort proceeding after the will of the decedent, without the codicil, had been adjudicated and admitted to probate. The Court wrote that Lewis’ claim was a “sufficient statement of an actionable wrong” so long as Lewis could prove that the testator’s intent did not change before she died.
Other Massachusetts cases support the recognition of the tort. In Monach v. Koslowski, 322 Mass. 466, 469-70 (1948), the alleged interference was fraudulently to prevent a testator from making a new will when defendant knew the testator wanted to change a prior will. The putative new will would have benefit-ted the plaintiff whereas the prior will, the will admitted to probate, omitted the plaintiff. The Court held “(t]here are strong intimations in our decisions that one who has been deprived of a devise, legacy or gift which a testator or donor would have given to him but for the wrongful interference of another may maintain *60 an action of tort against the latter for the recovery of damages.” Id. at 470. As in Labonte, the validity of a will was not directly at issue, but the Court recognized the tort where there was fraudulent interference with respect to an alleged desire to create a new will. The plaintiff in Monach would have to prove the testator’s intent was different from what was expressed in a will admitted to probate. See also, Torrasian v. Garabedian, 2015 WL 8024624 (D.Mass. (Saylor, J.) 2015) (denying motion to dismiss tortious interference with expectancy of inheritance claim notwithstanding a will admitted to probate); Spinnato v. Goldman, 67 F.Sup.3d 457, 466 (D.Mass. (Saris, J.) 2014) (denying motion to dismiss tortious interference with expectancy of inheritance claim arising from conduct that put into question the validity of a will admitted to probate). In sum, the Massachusetts cases make clear that (a) the tort of intentional interference with an expectancy is recognized, (b) proof depends on showing that “but for” the interference the plaintiff would have been a recipient, and (c) there may be recovery notwithstanding a prior will admitted to probate.
The basic premise of defendants’jurisdictional argument is that the Berkowitz Siblings must prove, in order to succeed, that the 2013willis invalid and that the 1961 will is valid. Moreover, to allow recovery by the Berkowitz Siblings, defendants contend, would be an attack on the probate court decree. I disagree with both propositions.
First, the Berkowitz Siblings do not have to prove that the 2013 will is invalid. Instead, they must prove that the procuring of the 2013 will, even assuming it is valid, was an intentional tortious act by defendants. If it was, the Berkowitz Siblings have been injured. Monach, supra at 469 (“plaintiff need not go any farther than to show that the attempt of the testator to revoke that will and to execute another will was frustrated by the wrongful interference by the defendants with the expectancy of the plaintiff for their own personal gain”). Second, the burden of the Berkowitz Siblings to succeed on the tortious interference claim is to show, whether by the 1961 will or otherwise, that there was a reasonable probability that they would have received legacies greater than what they received by the Compromise Agreement absent the interference. As described in Comment (d) to §774B of the Restatement (Second) of Torts, “(i]f there is a reasonable certainty established by proof of a high degree of probability that the testator would have made a particular legacy or would not have changed it if he had not been persuaded by the tortious conduct of the defendant and there is no evidence to the contrary, the proof may be sufficient that the inheritance would otherwise have been received.” At the motion to dismiss stage, the Berkowitz Siblings adequately allege the required reasonable likelihood of expectancy.
Moreover, the complaint of the Berkowitz Siblings is not a collateral attack on the decrees of the probate court. The nature of the probate court proceeding, a will contest, is different than a tort claim for tortious interference. ”[I]n a will contest, the testator’s intent or mental state is the key issue; in an intentional interference case, the wrongdoer’s unlawful intent to prevent another from receiving an inheritance is the key issue. Because of the differences in proof, the actions are not the same nor will the same evidence necessarily support both actions.” Huffey v. Lea, 491 N.W.2d 518, 521 (Sup.Ct. Iowa 1992) (holding that claim preclusion based on probate court judgment in will contest did not bar separate claim for intentional interference with expectancy to inherit).
Some courts that have dealt with similar facts have expressed concern that allowing a separate action to recover for wrongful interference with an inheritance may undermine the “jurisdictional space carved out by our legislature when it enacted the Probate Code and created remedies, such as a will contest, designed exclusively for probate.” Wilson v. Fritschy, 55 P.2d 997, 1002 (Ct. Of App., New Mexico 2002). This conclusion is not consistent with the Massachusetts cases cited above (which express no similar concern to bar a claim of intentional interference outside of a will contest proceeding) and appears to rest on a finding that the plaintiff in Wilson possessed an adequate remedy in the probate proceedings against the alleged wrongdoers. The test, according to Wilson, for whether a separate action may proceed is whether there was available an adequate remedy in probate. Id at 1001. In Massachusetts, however, a person injured by an intentional interference with an expectancy to inherit, committed by third parties not involved in a will contest (such as the present case), would have no remedy if the probate court decree in a will contest precluded recovery.[4] The probate court is a court of general equity jurisdiction, G.L.c. 215, §§3, 6. It does not have jurisdiction to decide a tort action for money damages. Feener v. New England Tel. & Tel. Co., 20 Mass.App.Ct. 166, 169 (1985) (negligence action in superior court against third party may proceed notwithstanding final judgment in probate court denying relief to plaintiff as a matter of estate administration). The Berkowitz Siblings could not have asserted their claims, including a claim for potential multiple damages under G.L.c. 93A and a claim for emotional distress, against defendants in this case in the probate court proceeding.
Finally, the probate court decrees adopted the resolution of a dispute agreed to among the possible legatees. There was no finding in the Compromise Agreement or in the decrees issued by the probate court that either the 1961 will or the 2013 will were valid or were not valid. The admission to probate of the Compromise Last Will and Testament of Nathalie Rothblatt was nothing more than an approval of a settlement because, as is obvious, the Compromise Will is not executed by the testator nor can it even purport to be an actual expression of her testamentary intent.[5] The decrees approving the Compromise Agreement are simply not under attack. For all of these reasons, the motion to dismiss for lack of jurisdiction will be denied.
*61 2. Motion to Dismiss for Failure to State a Claim
(a)Count VI (Tortious Interference With An Expectancy)
In addition to their challenge to the jurisdiction of the court to adjudicate this claim, defendants also advance two arguments for why the complaint fails to state a cognizable claim.
First, they note that the complaint fails to allege that any of the defendants knew about the 1961 will when they performed the acts that are the subject of the complaint. Putting aside whether defendants’ knowledge of the 1961 will might reasonably be inferred from the circumstances, the complaint survives even if defendants were unaware of the actual existence of the 1961 will. That is because the tort requires only that defendants intentionally interfere with an expectancy, not that defendants know the details and scope of the expectancy. Defendants knew, as a matter of law, that the execution of a new will acts to revoke all prior wills. Thus, there was a reasonable likelihood that heirs would suffer a loss of expectancy. The complaint alleges facts showing that defendants knew who the potential heirs of Rothblatt were, including the Berkowitz Siblings. Further, the facts alleged in the complaint demonstrate that Williams, assisted by the lawyers, intentionally interfered with the heirs’ expectancy by inserting a devise of $2 million to himself. Those facts are enough to sustain the cause of action. That the magnitude of the harm to the Berkowitz Siblings may allegedly be greater than what defendants actually contemplated is not fatal to the claim. A defendant who wrongfully interferes with a contract or advantageous relationship is liable for all losses to the plaintiff which flow, directly and proximately, from his tortious conduct. H.D. Watts Co. v. American Bond and Mortgage Co., 267 Mass. 541, 552 (1929) (interference with contract). See Restatement (Second) of Torts, §774A (damages for intentional interference may be loss of the expected benefit, consequential damages and emotional distress).
Second, defendants contend that the Berkowitz Siblings’ decision to enter into a compromise settlement of the will contest acts to defeat the causation element of their claim in the present case that must be proved against defendants. In other words, defendants say that the Berkowitz Siblings’ harm was caused by their decision to settle, not by defendants’ conduct. This argument overlooks the fact that the Berkowitz Siblings allege that they decided to enter into the Compromise Agreement precisely because of the uncertainty caused by defendants’ interference and the effect of defendants’ alleged wrongful conduct. Where a defendant’s tortious conduct causes the person affected by the conduct to settle a lawsuit for less than what the person otherwise would have received, a valid claim is stated. Fishman v. Brooks, 396 Mass. 643, 646 (1986) (legal malpractice claim asserting that lawyer caused plaintiff to accept inadequate settlement).
Accordingly, defendants’ motion to dismiss Count VI of the First Amended Complaint of the Berkowitz Siblings will be denied.
(b) Counts I and II (Professional Negligence)
Defendants argue that Counts I and II alleging professional negligence must be dismissed because neither the lawyers nor the financial advisor owed any duty of professional care to the Berkowitz Siblings. This is a correct statement of the law.
The Berkowitz Siblings had no relationship with either the Taylor Ganson defendants (“the lawyers”) or the RBC defendants (“the financial advisors”). The complaint does not allege any contract, representation or even a communication between the lawyers or the financial advisors and the Berkowitz Siblings. In short, there is no privity of contract between the Berkowitz Siblings and the defendant professionals.
In general, a lawyer’s duly of care arises from an attorney-client relationship. Miller v. Mooney, 431 Mass. 57, 60-61 (2000). Specifically, it is well settled that in preparing a will, an attorney can have only one client to whom he owes a duly of undivided loyalty. There is no duty of professional care running from the attorney to a potential heir. Id. at 63-64. Logotheti v. Gordon, 414 Mass. 308, 311-12 (1993). As a result, the Berkowitz Siblings’ claim of negligence or legal malpractice against the Taylor Ganson defendants must be dismissed.
Similarly, a financial advisor’s duty of care arises from a contractual relationship. A professional owes a duty of care to a party with whom he is not in privily of contract only in circumstances where the professional knew that the non-client would rely on his representations or services. Flattery v. Gregory, 397 Mass. 143, 147 (1986). Moreover, as with lawyers, a financial advisor involved with assisting a testator with respect to her testamentary intentions is inevitably put in a position of having a potential conflict of interest between his client and the possible heirs. He cannot owe duties of care to both the client and the heirs. Spinner v. Nutt, 417 Mass. 549, 554 (1994) (“it is the potential for conflict that prevents the imposition of a duty on the defendants to the trust beneficiaries”). The Berkowitz Siblings’ claim against Williams and RBC for professional negligence must fail.
(c) Counts m and IV (Violation of G.L.c. 93A)
Defendants seek dismissal of the Berkowitz Siblings’ G.L.c. 93A claim on the ground that the complaint fails to allege a commercial relationship between the lawyers and the financial advisors, on the one hand, and the Berkowitz Siblings, on the other. The First Amended Complaint does not explicitly state whether the claim is made under §9 or § 11 of c. 93A, but facts asserting compliance with the demand requirement of §9 are alleged. Also, the Berkowitz Siblings do not constitute a “business” that could bring a claim under §11, so the analysis must proceed on the basis that plaintiffs’ claim is under §9.
*62 Under §9(1) “[a]ny person, . . . who has been injured by another person’s use or employment of any method, act or practice declared to be unlawful by section two” may recover. Plaintiffs must allege facts to show that defendants acted in the conduct of trade or commerce in order to state a cognizable claim. G.L.c. 93A, §2 (declaring unlawful “unfair or deceptive acts or practices in the conduct of any trade or commerce'') (emphasis added). “[T]o survive the defendant’s motion to dismiss, the plaintiffs must show that the defendant had a commercial relationship with the plaintiffs or that defendant’s actions interfered with ‘trade or commerce.’ ” First Enterprises Ltd. v. Cooper, 425 Mass. 344, 347 (1997).
Here, there was an indirect commercial relationship between plaintiffs and defendants. There is no requirement that the Berkowitz Siblings be in privily of contract with defendants in order to proceed on a claim of violation of c. 93A, §9. Ciardi v. F. Hoffmann-LaRoche Ltd., 436 Mass. 53, 65 (2002) (plaintiff must allege a connection between herself and the defendants, albeit an indirect one). An indirect connection includes the relationship between a plaintiff who suffers an injuiy from wrongful conduct, regardless of whether the plaintiff purchased goods or services involved in perpetrating the wrongful conduct. Maillet v. ATF-Davidson Co., Inc., 407 Mass. 185, 190-91 (1990) (breach ofwarranty claim by injured person, not in privity, upheld).
“Trade” and “commerce” are defined in § 1(b) of c. 93A to include the offering of any service in the Commonwealth. There is no question that the complaint adequately alleges that the lawyers and the financial advisors offered their services to Rothblatt in a commercial transaction. Further, when defendants offered their services to Rothblatt it was foreseeable that heirs of Rothblatt, including the Berkowitz Siblings, would suffer injuiy if the services were shown to be a tortious interference with the expectancy of an inheritance. In order to state a claim under c. 93A, all that is necessary is that ' plaintiffs allege (1) an unfair or deceptive act or practice committed in a business context; (2) a loss or injuiy; and (3) a causal connection between the deceptive act or practice and that loss or injuiy. Cohen v. Brokers ’ Service Marketing Group II, LLC, 87 Mass.App.Ct. 1121 (2015); 2015 WL 2364313 (upholding c.93A claim by investor injured by broker with whom investor had no contact or communication). The Berkowitz Siblings’ complaint satisfies that requirement.
The lawyer defendants rely on two decisions of the Supreme Judicial Court dismissing c. 93A claims against lawyers responsible for drafting an estate plan for a decedent. Miller v. Mooney, 431 Mass. 57, 65 (2000); Logotheti v. Gordon, 414 Mass. 308, 312. In both cases, the Court first held that the lawyer defendants could not be held liable to disappointed heirs of the decedents for legal malpractice or negligence. There were no claims of intentional wrongdoing in either case and there was no claim of civil conspiracy with a non-lawyer to commit an intentional tort. With respect to potential c.93A liability, the Court in Logotheti merely mentioned that “the same policy reasons” (i.e., a lawyer should not have potentially conflicting duties of care to the decedent and to the heirs) requiring dismissal of the negligence claim should apply to the c. 93A claim. Id. In Miller, the Court held that a lawyer who had represented the testator for more than thirty years should not be held liable to her heirs for negligence. With respect to c. 93A, the Court noted that plaintiffs must show that the lawyer was acting in a business context, and he was not when he negligently failed to leam that his associate had drafted a new will. Miller, 431 Mass, at 65. The Court did not articulate a general principle regarding c. 93A liability but, instead, ruled on the facts specific to those cases.
I find that both Miller and Logotheti are distinguishable from the present case. Here, the lawyers became involved at the request of a financial advisor. They had no previous relationship with Rothblatt. The combination of the financial advisor and the lawyers was allegedly a commercial venture to earn fees and more. The complaint alleges that the combination was a conspiracy to intentionally interfere with the expectancy of Rothblatt’s heirs by diverting assets to Williams and by creating a trust so the lawyers could earn substantial fees. This was not a private matter between a lawyer and his longstanding client. It was an alleged use of defendants’ commercial positions to advance a scheme to injure third persons. Defendants were acting in trade or commerce.
(d) Count V (Civil Conspiracy)
To succeed on their claim for civil conspiracy, the Berkowitz Siblings will have to prove that defendants acted together either (1) to exercise some power of coercion that they would not have had if they had acted independently, or (2) pursuant to “a common plan to commit a tortious act.” Kurker v. Hill, 44 Mass.App.Ct. 184, 188-89 (1998). The first prong is inapplicable because the power of coercion must be directed at the party bringing the claim; here, the Berkowitz Siblings. There is no such allegation in the complaint. The second prong of civil conspiracy is, however, satisfied by the factual allegations that Williams and the lawyers intentionally interfered with plaintiffs’ expectancy of inheritance. The facts alleged give rise to a reasonable inference, all that is necessary at the motion to dismiss stage, that defendants engaged in a purportedly tortious “common plan.” All “the plaintiffs must show [is] an underlying tortious act in which two or more persons acted in concert and in furtherance of a common design or agreement.” Bartle v. Berry, 80 Mass.App.Ct. 372, 383-84, rev. denied, 460 Mass. 1116 (2011). Defendants’ motion to dismiss this countwill be denied.
(e) Counts VII and VIII (Respondeat Superior)
Because the claims of the Berkowitz Siblings for tortious interference, civil conspiracy and c. 93A survive the motions to dismiss, so too the claims' against the employers. Defendants do not argue that the individual defendants were acting outside of the scope *63 of their employment. The counts alleging respondeat superior liability will not be dismissed.
B. Second Amended Complaint of Stephen Hanna as Personal Representative of the Estate of Nathalie Rothblatt (Civil Action No. 2016-0722)
Defendants move to dismiss the Second Amended Complaint (“SAC”) of Stephen Hanna, the personal representative of the Estate of Nathalie Rothblatt, for essentially one reason: Defendants contend that the only damages sought by the Estate are not recoverable. A further explication of the facts from the SAC and the documents submitted from the files of the probate court proceeding aids in resolution of the motion.
Stephen Hanna was appointed personal representative of the Estate to try and “sort everything out” when it became clear that there was going to be a complicated contest over the administration of Rothblatt’s Estate. SAC ¶61. According to the Order appointing Hanna, his appointment was necessary “to preserve the estate or to secure its proper administration.” Litigation among the potential heirs of Rothblatt ensued regarding the validity of both the 1961 and 2013 wills. The SAC alleges facts plausibly to suggest that the alleged wrongful conduct of defendants with regard to the 2013 will was a contributing cause to at least some of the litigation activity. In addition, the SAC alleges that it was reasonably foreseeable to defendants that there would be litigation over a will that was executed on Rothblatt’s deathbed in the circumstances of her failing health and with testamentary provisions that gave substantial benefits to Williams and the attorneys. SAC ¶64. Legal costs and fees, totaling approximately $1,240,000, “were lawfully and reasonably assumed” by the Estate “as part of the settlement of the Estate Litigation.” SAC ¶65. The facts alleged show that the Estate had an interest in resolving the disputes in order to reach closure.
The Compromise Agreement that memorialized the settlement of the litigation provides that the “Estate shall also pay the costs of litigation and attorneys fees incurred by each party... or reimburse each party for such costs and fees already paid, but each of these payments and reimbursements shall be specifically allocated against and reduce the share of the Estate to be received by each party in accordance with [the agreed upon percentages for each person’s share of the Estate].” The probate court approved the Compromise Agreement and therefore approved the expenditure by the Estate.
Defendants’ first argument is that the Estate did not really pay the fees or, as argued by RBC, the agreement for the Estate to pay the fees was a “ruse” and a “feint.” The argument flies in the face of the maxim that, on a motion to dismiss, the facts alleged, and all reasonable inferences from the facts, must be accepted as true. The-Estate did pay the fees. Such payment was authorized by the probate court. At this stage of the litigation, nothing more need be said.
Defendants’ second argument is that the SAC fails sufficiently to allege causation. This argument is made in two parts. The first part is that there is no “but for” causation alleged; i.e., that defendants’ wrongful conduct was a cause of the Estate litigation. A glance at the SAC, however, reveals that “but for” causation is explicitly alleged. That there may have been other contributing causes for the litigation is not a ground for dismissal of the Estate’s complaint. The second part of the causation argument is that the payment of the fees by the Estate was caused by the Estate’s voluntary decision to assume the fees and not by defendants’ conduct. Again, this may or may not be so, but it will depend on the facts as they develop. There may be facts surrounding why the Estate assumed payment of the fees, including its interest in obtaining the compromise result and expediting the closing of the Estate. Or there may be facts surrounding whether the Estate holds, implicitly or explicitly, an assignment to recover the fees incurred by the heirs. Resolution of this issue of proximate cause is inappropriate on a motion to dismiss.
Two additional substantive arguments are made by defendants in support of their motions to dismiss. Both are without merit. The RBC defendants, but not the lawyer defendants, advance an argument that the Estate’s substantive claims of professional negligence, civil conspiracy, and violation of c. 93A do not survive the death of Rothblatt. This is not correct. Actions that arise from a contractual relationship, such as the claims here based upon Rothblatt’s engagement of RBC and Taylor Ganson as professionals, survive. McStowe v. Bornstein, 377 Mass. 804, 808 (1979). The lawyer defendants, but not the RBC defendants, contend that the allegations of the Estate complaint do not rise to the level of a c. 93A violation. Accepting the allegations of the SAC as true, I find that a plausible c. 93A claim is stated. In addition, a fair evaluation of c. 93A liability- should await a full record upon summary judgment or trial.
In sum, defendants’ arguments for dismissal of the action brought by the Estate to recover legal fees and costs incurred by the Estate to obtain a resolution of disputes allegedly caused by defendants’ conduct are without merit. The motions to dismiss will be denied.
C. Motion to Compel Arbitration
RBC and Williams move to compel arbitration of the claims asserted against them by the Berkowilz Siblings and by the Estate. In support of their motion they submit the Affidavit of Gregory Gibbs, a senior paralegal at RBC Wealth Management, attesting to certain documents that Gibbs says represent an agreement between Rothblatt and RBC. In a document dated November 30, 2003, Rothblatt apparently signed a Client Account Information Form that affirmed the following:
I acknowledge that I have received the Client Agreement and agree to abide by its terms as currently in effect or as they may be amended from time to time. *64 I UNDERSTAND THIS ACCOUNT IS BEING GOVERNED BY THE PRE-DISPUTE arbitration clause appearing on page 6 of the Client Agreement at Section 19.
Emphasis in the original.
Gibbs then attaches an unsigned document entitled Client Account Agreement and states in his affidavit that it “is a true and accurate copy of the Client Agreement between Nathalie Rothblatt and RBC Data Rauscher n/k/a RBC WM” for the period through November 2003. (In an earlier paragraph of his affidavit, Gibbs states that RBC WM is a division of defendant, RBC Capital Markets, LLC.) Gibbs also attaches an unsigned copy of a Client Account Agreement dated Februaiy 2013, and swears in his affidavit that it is “the Client Account Agreement between Nathalie Rothblatt and RBC WM in effect for clients of RBC WM on the date of Nathalie Rothblatt’s death in March 2013.”
Both of the unsigned client agreements contain a clause saying, in slightly different language, that the agreement shall be binding upon Rothblatt’s heirs, executors, administrators, personal representatives, successors and assigns. Both of the unsigned client agreements contain an arbitration provision. Both of the unsigned agreements say they are governed by Minnesota law.
RBC and Williams contend that the claim of the Berkowitz Siblings must be sent to arbitration because they are “heirs” and the putative client agreements say that the contract is binding on Rothblatt’s heirs. RBC and Williams cite no authority, however, for how it could possibly be that a contract between Rothblatt and RBC binds non-parties. While the Estate, standing in Rothblatt’s shoes, may or may not be bound by the putative agreements, it is fundamental contract law that a contract only binds the parties thereto. Thus, the motion of RBC and Williams to send the Berkowitz Siblings’ claims to arbitration will be denied.
In the opposition of the Estate to the motion to compel arbitration, it is pointed out that arbitration was never mentioned by RBC “until very recently.” Counsel for the Estate says that a c. 93A demand letter went to RBC on November 16, 2015. The demand letterwas responded to by RBC in December 2015, without mention of the arbitration clause and without demand to arbitrate. Rather than demand arbitration promptly, RBC and Williams elected to (i) wait until after this action was commenced in August 2016, (ii) attempt to obtain dismissal of the action by separate motions to dismiss for lack of jurisdiction and for failure to state a claim, and (iii) only if such motions failed, compel arbitration. The opposition also expresses some skepticism about whether the affidavit of Gibbs and the attached documents actually represent valid contracts between Rothblatt and the defendants in this case, RBC and Williams. Apparently, no discovery has taken place with respect to this subject. The opposition also contests whether the language of the putative agreements to arbitrate covers a claim like the one asserted here by the Estate.
Accordingly, I decline, at this time, to rule on the motion to compel arbitration of the Estate’s claim. The motion will be denied, without prejudice, to re-filing the motion within ninety (90) days of this Memorandum and Order. The parties should have an opportunity to take discovery on the issue of the existence of a valid, binding arbitration agreement. The parties should also address the application of Minnesota law to their disputes as to the validity and scope of the arbitration provision. In addition, the parties should address in any future motion to compel arbitration whether there has been a waiver of arbitration by the conduct of RBC and Williams.
CONCLUSION
For the reasons stated above (i) the joint motion of all defendants to dismiss both actions for lack of jurisdiction is DENIED; (ii) the motions of all defendants to dismiss the Lead Case, the action by Stephen Hanna as personal representative of the Estate, for failure to state a claim are DENIED; the motions of all defendants to dismiss the Consolidated Case, the action by the Berkowitz Siblings, for failure to state a claim are ALLOWED, in part, and DENIED, in part. Counts II and III of the Berkowitz Siblings’ complaint are DISMISSED. Otherwise, the motions to dismiss are DENIED. The motion of RBC and Williams to compel arbitration of the claims of the Berkowitz Siblings is DENIED. The motion of RBC and Williams to compel arbitration of the claims of the Estate is DENIED WITHOUT PREJUDICE to re-filing as described in this memorandum.

 The financial advisory defendants also move to compel arbitration. See Part C of this memorandum.

 Count I, Legal Malpractice; Count II, Professional Negligence (Williams); Count III, C. 93A (attorneys); Count IV, C. 93A (Williams and RBC); Count V, Civil Conspiracy; Count VI, Tortious Interference With an Expectancy; Count VII, Respondeat Superior (law firm); Count VIII, Respondeat Superior (RBC).

 he statute, G.L.c. 215, §3, does not use the word “exclusive” when describing the probate court’s jurisdiction over wills, while it does use the word “exclusive” for other jurisdictional descriptions, such as divorce. Whether the probate court’s jurisdiction over will contests is “exclusive” is an issue I do not need to decide because, as described later in this memorandum, the claim in this case is not a will contest.

 In contrast, where the alleged wrongful interference could be fully litigated by the parties to a will contest in probate court, the will contest determination will be “final and conclusive upon all the parties.” Brignati v. Medenwald, 315 Mass. 636, 637-38 (1944). The Court explicitly distinguished those facts from the facts of Lewis v. Cohen, cited supra, where the probate court did not have the power to provide a complete remedy.

 By motion, assented to, defendants submitted Exhibit G to the Affidavit of Debra Squires-Lee, a copy of the Compromise Last Will and Testimony of Nathalie Rothblatt. The document bears typewritten “signatures” of Rothblatt (“/s/ Nathalie Rothblatt”) and defendants, Cook and Starr. The typewritten signatures of Cook and Starr attest “that the Testatrix [Rothblatt] signs and executes this instrument as her Will and that she signs it willingly (or willingly directs another to sign for her), and that each of us, in the presence and hearing of the Testatrix, hereby signs this Will as a witness . . .’’Of course, none of this can be true because the Compromise Will came into being after the death of Rothblatt.