NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-308

BRADLEY BIRKENFELD

vs.

PAMELA BIRKENFELD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Ronald Birkenfeld died on Friday, December 25, 2020, survived by his wife Pamela Birkenfeld and his son Bradley Birkenfeld, among others. The following Monday, Bradley[1] filed suit in the Superior Court against Pamela (his stepmother), claiming fraud and unjust enrichment (counts one and two) based on a 2012 gift from Bradley to Pamela and Ronald, and tortious interference with an expectancy (count three) based on Pamela's alleged diversion of money from Ronald's estate. On Pamela's motion to dismiss under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), a Superior Court judge (first judge) dismissed counts one and two as time-barred. The first judge declined to dismiss count three and allowed Bradley to file an amended

_____

[1] We will use first names to avoid confusion.

complaint on that count, which he did. Pamela then filed another motion to dismiss, which was allowed by a second judge. Bradley appeals from the judgments dismissing his claims. We affirm.

Background. We accept the allegations of the complaint and amended complaint as true for purposes of this appeal. See Lanier v. President & Fellows of Harvard College, 490 Mass. 37, 43 (2022). We also draw facts from the uncontested documents submitted with Pamela's first motion to dismiss, which were relied on by the parties and the second judge. See id.

In 2007 Ronald executed a last will leaving his residuary estate to the Ronald Birkenfeld 2007 Revocable Trust (trust). Also that year, Ronald created the trust by signing a trust agreement, which provided for the establishment of two separate subtrusts, "Trust A and Trust B," on Ronald's death. Trusts A and B were funded with the trust's assets as set forth in the trust agreement. Under the trust agreement, Pamela is entitled during her lifetime to "all of the income of Trust A"; she also may receive principal from Trust A and income and principal from Trust B. When Pamela dies, any undistributed income in Trust A pours into Pamela's estate, while any remaining principal in Trust A and any remaining income and principal in Trust B are to be distributed to Ronald's sons "in such amounts and proportions as [Pamela] shall direct and appoint" in her will.

2

In 2012 Bradley received a substantial monetary award from the Internal Revenue Service and made generous gifts to family members, including $500,000 to Pamela and Ronald. Bradley decided to give that amount because Pamela said she and Ronald needed help paying off their mortgage. Bradley believed that the money would be used for that purpose but learned in late 2019 that the mortgage was not paid off until 2018. As alleged by Bradley, Pamela lied about needing money and spent the gift on her stepchildren from a previous relationship; she also exerted control over and exploited Ronald's finances.

Discussion. We review the allowance of a motion to dismiss de novo to determine whether the factual allegations, taken as true and drawing every reasonable inference in the plaintiff's favor, plausibly suggest an entitlement to relief. See Lanier, 490 Mass. at 43.

1. Counts one and two. Pamela argued in her first motion to dismiss that counts one and two were subject to the three-year statute of limitations in G. L. c. 260, § 2A. Bradley raised no argument to the contrary, and the first judge applied that statute to both claims. To the extent Bradley now argues that a different limitations period applies, the argument is waived. See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006).

Whether Bradley's claims are timely under G. L. c. 260, § 2A, turns on when they accrued.  The common-law discovery rule provides "that a cause of action accrues for purposes of the statute of limitations on the happening of an event likely to put the plaintiff on notice of facts giving rise to the cause of action."  Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 520 (1997).  The "inquiry focuses on which was the first event reasonably likely to put the plaintiff on notice that the defendant's conduct had caused him injury."  Szymanski v. Boston Mut. Life Ins. Co., 56 Mass. App. Ct. 367, 371 (2002).  Here, for Bradley's claims (filed in 2020) to be timely, we would have to conclude that they did not accrue until 2017.  But Bradley could have discovered the facts underlying the claims -- that Pamela did not pay off the mortgage promptly after receiving Bradley's gift in 2012 -- through a public records search at any time after he made the gift.  We agree with the first judge that a reasonably prudent plaintiff would have made inquiry well before 2017 and that Bradley's claims are therefore time-barred.  See AA&D Masonry, LLC v. South St. Business Park, LLC, 93 Mass. App. Ct. 693, 699-700 (2018) (discovery rule did not protect complaint from dismissal where plaintiff delayed for unreasonable time in obtaining publicly available information that would have put plaintiff on notice of the alleged fraud).

4

On appeal Bradley appears to switch course, abandoning any reliance on the common-law discovery rule. Instead, he argues that the first judge should have applied the statutory discovery rule found in G. L. c. 260, § 12, which tolls a statute of limitations where there has been "[f]raudulent concealment." Bradley did not raise this argument to the first judge, however, and has thus waived it.[2] See Carey, 446 Mass. at 285. Moreover, even absent waiver, the statutory discovery rule would not save Bradley's claims. To invoke the rule, Bradley needed to specifically allege that Pamela "concealed the existence of a cause of action through some affirmative act done with intent to deceive." Magliacane v. Gardner, 483 Mass. 842, 852 (2020), quoting White v. Peabody Constr. Co., 386 Mass. 121, 133 (1982). Even read generously, the complaint does not plausibly allege that Pamela committed an "affirmative act" of concealment.

2. Count three. To prevail on a claim of tortious interference with an expectancy, "a plaintiff must show that a defendant intentionally interfered through unlawful means with the plaintiff's legally protected interest by acting on the would-be donor continuously 'until the time the expectancy would

---

[2] We disagree with Bradley's assertion that he raised the statutory discovery rule in his opposition to Pamela's first motion to dismiss. The opposition does not cite the statute, and the analysis is framed in terms of whether Bradley complied with his duty of inquiry under the common-law rule.

have been realized.'" Sacks v. Dissinger, 488 Mass. 780, 786 (2021), quoting Labonte v. Giordano, 426 Mass. 319, 321 (1997). Bradley's claim is that Pamela interfered with his "legally protected interest in the principal of Trust A and the principal and undistributed income of Trust B" by diverting assets from Ronald's estate. But Bradley fails to grapple with the language of the trust agreement, which establishes that Pamela is the only beneficiary of the trust during her lifetime; that the trustees must distribute all of the income from Trust A and may distribute, "in their uncontrolled discretion," the principal from Trust A and the income and principal from Trust B to Pamela during her lifetime; and that Pamela has the discretion to designate in her will who among Ronald's sons will receive any remaining income and principal upon her death. Based on the plain language of the trust agreement, the second judge was correct to conclude that "[i]t is only after Pamela's death that [Bradley] could receive a portion of the principal of Trust A and the principal and undistributed income of Trust B, and only if Pamela directs such a distribution to [Bradley] in her will." See Ferri v. Powell-Ferri, 476 Mass. 651, 654 (2017) ("where the language of a trust is clear, we look only to that plain language").

Bradley offers no other interpretation of the trust agreement, and he does not dispute that, according to the terms

6

of Ronald's will, the residue of Ronald's estate poured over into the trust.  Nor does Bradley allege that either Ronald's will or the trust agreement was the product of undue influence that Pamela exercised over Ronald.  Therefore, even assuming as true that Pamela diverted assets from Ronald's estate, Bradley has not plausibly alleged that he had a "legally protected interest" in the estate with which Pamela interfered.  Sacks, 488 Mass. at 786.  Because Bradley can only receive income and principal from the trust (if any remains) upon Pamela's death and at her discretion, he has no viable claim that he had an expectancy in Ronald's estate that he would have realized but for Pamela's interference.  Cf. Labonte, 426 Mass. at 321 ("cause of action cannot arise for tortious interference with the expectancy of receiving a legacy until the donor's death,

7

because any such expectancy would only be realized at that time").[3]

Judgments affirmed.

By the Court (Henry, Shin & Hodgens, JJ.[4]),

*Joseph F. Stanton*

Clerk

Entered:  April 28, 2023.

---

[3] Bradley also contends that the second judge erred by not considering "newly discovered" facts that Bradley referred to during the motion hearing.  But as Bradley did not amend, or even move to amend, his complaint based on those purported new facts, the second judge correctly determined that she was confined to the allegations of the operative complaint.
[4] The panelists are listed in order of seniority.