No. 97-532

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 198

VERNA JOYCE HAUCK,

Plaintiff, Appellant and Cross-Respondent,

v.

MERLE L. SERIGHT, as an individual

and as Personal Representative of the

Estate of Alice A. Sisson, Deceased,

Defendant, Respondent and Cross-Appellant.

APPEAL FROM: District Court of the Tenth Judicial District,

In and for the County of Fergus,

Honorable John R. Christensen, Judge Presiding.


COUNSEL OF RECORD:


For Appellant:


Robert L. Johnson, Attorney at Law, Lewistown, Montana


For Respondent:


Jon A. Oldenburg, Attorney at Law, Lewistown, Montana


Leonard H. McKinney, Attorney at Law, Lewistown, Montana

Submitted on Briefs: June 14, 1998

Decided: August 11, 1998

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

**¶ In this will contest, the Tenth Judicial District Court, Fergus County, dismissed Verna Joyce Hauck's claim for tortious interference with an expectancy. On Hauck's other claims, a jury found that Merle Seright unduly influenced his aunt and Hauck's adoptive mother, Alice A. Sisson, when she executed her October 30, 1992 Will, but that Sisson was free from undue influence in other transactions. The court ordered formal probate proceedings as to Sisson's October 27, 1992 Will. Hauck appeals, and Seright cross-appeals. We affirm.**

**¶ Hauck raises the following issues on appeal:**

**¶ 1. Did the District Court err in dismissing Hauck's damage case against Seright for tortious interference with her expectancy from decedent Sisson?**

**¶ 2. Did the court err in adjudging that a $105,000 withdrawal from Sisson's capital and a $100,000 quasi-testamentary disposition were valid transfers?**

**¶ 3. Did the court err in admitting Sisson's October 27, 1992 Will to probate?**

**¶ 4. Did the court err in granting Seright his attorney fees and costs?**

**¶ On cross-appeal, Seright raises a fifth issue, arguing that the court erred in failing to grant his motions for directed verdict and for judgment notwithstanding the verdict.**

Background

**¶ In the pretrial order, the parties stipulated to the following facts:**

> 1. Plaintiff Verna Joy Hauck resides in Seal Rock, Oregon and she is the adopted daughter of the late Alice A. Sisson. Mrs. Sisson died in Lewistown, Montana on September 30, 1995 at the age of ninety years. Defendant Merle L. Seright is a resident of Fort Benton, Montana and he is one of Mrs. Sisson's nephews.

> 2. Mrs. Sisson was the widow of the late Laurence R. "Ray" Sisson who died in Lewistown, Montana on May 19, 1990. Mrs. Sisson inherited all of Ray Sisson's property.

> 3. After Mrs. Sisson's death Merle Seright commenced informal proceedings in this court to administer her estate. The clerk appointed him personal representative under the terms of a Will he filed which was dated October 30, 1992. Merle Seright petitioned the court for an order admitting that Will to probate, and Joy Hauck contested claiming that the Will was procured by Merle Seright through undue influence. It conflicts with the provisions of a Will Mrs. Sisson executed on October 27, 1992. In an independent action Joy Hauck complains that Merle Seright interfered with her expectancy of inheritance from Mrs. Sisson, and she asks that he respond to her in appropriate damages. The Will contest and the damage action have been consolidated for trial.

No

¶ At trial, Hauck testified that she had known the Sissons all her life and that she had maintained a close relationship with them for many years. After Ray Sisson died in 1990, Hauck stayed with Alice Sisson for about a month and helped with her financial and other affairs. During that visit, Sisson adopted Hauck as her daughter and granted her a power of attorney. Sisson later canceled that power of attorney when she became aware that Hauck was receiving her bank statements.

¶ In February 1991, Sisson executed another power of attorney naming Hauck as her attorney-in-fact. In April of that year, however, Sisson again revoked Hauck's power of attorney and instead named Seright as her attorney-in-fact. Also during April of 1991, Sisson made a $100,000 account she held with the Edward D. Jones investment firm payable upon her death to Seright and his brothers and sisters.

¶ On October 27, 1992, while Hauck was again visiting her, Sisson executed a Will in the offices of her longtime Lewistown, Montana attorneys, Wilkins & Berger. In that Will, Sisson bequeathed to Hauck 40 percent of her estate, which exceeded $400,000 in total value. Three days later, on October 30, 1992, after Hauck had left town, Seright took Sisson to the offices of another Lewistown attorney, Leonard McKinney. There, Sisson executed a Will reducing Hauck's share of her estate to $10,000 and canceling Hauck's inheritance altogether if Hauck contested the Will.

¶ In December 1992, upon Seright's petition alleging that Sisson was incapacitated and unable to make a consistent estate plan, the District Court appointed Lewistown attorney Leonard McKinney as Sisson's legal guardian. The petition was supported by the recommendation of Sisson's physician, who stated that Sisson did not have good short term memory and was not able to perform moderately complex calculations.

¶ Following Sisson's death in September 1995, Seright applied for probate of her October 30, 1992 Will. Hauck contested that Will. She also filed a separate action against Seright alleging that he had fraudulently represented to Sisson that Hauck was stealing from her, inducing Sisson to allow his name and those of his siblings to be placed upon her securities as beneficiaries at her death. The two matters were consolidated for trial.

¶ Both parties presented evidence at trial that Sisson was susceptible to the influence of others in her decision making. Hauck admitted that her relationship with Sisson

had cooled dramatically in the last years of Sisson's life, but she contended that this was because of Seright's improper influence upon Sisson. Seright presented witnesses who testified to the effect that Sisson distrusted Hauck and wanted to distance herself from Hauck financially as much as she could in spite of their adoptive mother-daughter relationship. Hauck contended that Seright influenced Sisson in April 1991 to make the $100,000 Edward D. Jones account payable to himself and his siblings upon Sisson's death; to execute her October 30, 1992 Will; to transfer $105,000 from her Edward D. Jones account to him and his wife in December 1992; and, in January 1993, to list him and his siblings as the beneficiaries of a $100,000 IDS investment account. Seright presented evidence that it was Hauck who was influencing Sisson to make financial decisions which she really did not want to make, and that he had merely helped Sisson to carry out her own wishes.

¶ The court ruled that there was no evidence of undue influence as to the April 1991 transfer of Edward D. Jones funds, and did not submit that issue to the jury. In answer to special interrogatories, the jury found that Sisson was not free from undue influence by Seright when she executed her October 30, 1992 Will. The jury found, however, that Sisson was free from undue influence from Seright when she transferred her Edward D. Jones funds to him and his wife in December 1992 and when she named Seright and his siblings as beneficiaries on her IDS account in January 1993.

¶ After trial and after the parties filed various post-trial motions, the October 27 Will was admitted to formal probate.

Issue 1

¶ Did the District Court err in dismissing Hauck's damage case against Seright for tortious interference with her expectancy from decedent Sisson?

¶ After Hauck presented her case in chief at trial, Seright moved to dismiss all of her claims. As to the claims for tortious interference with an expectancy, the court took the motion under advisement. At the close of the evidence, the court granted the motion to dismiss the claim for tortious interference with an expectancy as to the April 22, 1991 transaction in which Sisson transferred $100,000 into a payable-on-

death Edward D. Jones account. The court stated that there was insufficient evidence to go to the jury on that claim. The court did not allow the jury to consider the tortious interference claim because "I think this is an undue-influence case."

¶ Tortious interference with an expectancy has not heretofore been recognized as a legal theory in Montana. Where it is recognized, the tort consists of intentionally and by fraud, duress, or other tortious means preventing another from receiving from a third person an inheritance or gift that he would otherwise have received. Restatement *(Second)* of Torts § 774B (1977).

¶ The elements of undue influence are: (1) a confidential relationship between the person alleged to be exerting undue influence and the testator; (2) the testator's physical condition affects her ability to withstand undue influence; (3) the testator's mental condition affects her ability to withstand undue influence; (4) the unnaturalness of the disposition shows an unbalanced mind or a mind easily susceptible to undue influence; and (5) the demands and importunities may have affected the testator, taking into consideration the time, place, and surrounding circumstances. *Matter of Estate of Jochems* (1992), 252 Mont. 24, 28, 826 P.2d 534, 536.

¶ The court allowed Hauck's claims regarding the December 1992 and January 1993 transactions to go to the jury on a theory of undue influence. Hauck has not shown how it would have been to her advantage had the court instead or in addition allowed her to proceed on a theory of tortious interference with an expectancy as to those transactions. We conclude that the court did not err in ruling that this case was tried as a claim for undue influence.

¶ The only claim which the court did not allow the jury to consider under any theory was Hauck's claim that the April 1991 transfer was improper. In reviewing a directed verdict, this Court will consider only the evidence introduced by the party against whom the directed verdict is granted. If that evidence, when viewed in a light most favorable to the party, tends to establish the case alleged in the party's pleading, we will reverse the directed verdict. The test is whether reasonable persons could draw different conclusions from the evidence. *Wise v. Ford Motor Co. (1997), 284 Mont. 336, 343, 943 P.2d 1310, 1314.*

¶ Sisson's Edward D. Jones agent provided the only direct evidence as to the April

1991 transaction. The agent testified that prior to that time, Sisson asked him on a number of occasions what she could do to move some of her assets out of her accounts and to get them out of her estate because "[s]he was concerned that those dollars because of the way things were going were going to end up in Joy Hauck's hands, and she didn't want that to happen." He testified that she "absolutely" knew what she was doing when she made the transaction and that he felt no one had put any pressure on her to make the transaction.

¶ We agree with the District Court that on this record there was no evidence to support a claim of tortious interference with expectancy as to the April 1991 transaction. For that reason, and because Hauck's claims as to the October 30, 1992 Will and the December 1992 and January 1993 transactions went to the jury on theories of undue influence, we need not address whether tortious interference with an expectancy will be recognized as a cause of action in Montana. We hold that the District Court did not err in dismissing Hauck's damage case against Seright for tortious interference with her expectancy from Sisson.

Issue 2

¶ Did the court err in adjudging that a $105,000 withdrawal from Sisson's capital and a $100,000 quasi-testamentary disposition were valid transfers?

¶ The jury found in answer to special interrogatories that neither Sisson's transfer of $105,000 in Edward D. Jones funds on December 18, 1992, nor her January 27, 1993 transfer of $100,000 in IDS funds was a matter of undue influence. Hauck argues that the court went beyond the jury's verdict in stating in its judgment that these were "valid transfers." She asks that such language be stricken from the judgment as being outside the issues submitted as to the December 18 transfer and as an improper preclusion of any future argument that the January 27 transfer was a voidable act by an unadjudicatedly incapacitated person. Hauck fears that the court's order has the effect of authorizing Seright and his wife to keep the $105,000--a result even Seright testified was not Sisson's intention. He testified that he and his wife were merely holding this money for Sisson to cover any possible medical expenses she might incur.

¶ The court's order stated, "The transfer of funds by Alice A. Sisson to Merle and Priscilla Seright, from her account at Edward D. Jones, on December 18, 1992, was a valid transfer and not as a result of undue influence," and, "The transfer by Alice A.

Sisson from IDS Bond Fund account no. . . . on January 27, 1993, to trust accounts whereby [Seright and his siblings] are beneficiaries, were valid transfers and not as a result of undue influence."

¶ Our review of the court's order shows that its language follows that used in the special interrogatories agreed to by the parties and upon which the jury rendered its verdict. We hold that the court did not err in its judgment.

Issue 3

¶ **Did the court err in admitting Sisson's October 27, 1992 Will to probate?**

¶ Under this issue, Hauck argues that as a result of the defeat of the October 30, 1992 Will, Sisson should be deemed to have died intestate. Hauck makes a somewhat round-about argument that under the doctrine of dependent relative revocation, Sisson's October 27 Will should be deemed revoked in order to comply with Sisson's intent that Hauck inherit the bulk of her estate. Hauck argues for a determination of intestacy by which, as Sisson's adopted daughter, she would inherit all of the property remaining within Sisson's estate.

¶ The doctrine of dependent relative revocation presumes that a testator who has canceled an old will preparatory to making a new will which thereafter fails would prefer the old will to an intestacy. *Matter of Estate of Patten* (1979), 179 Mont. 299, 301-02, 587 P.2d 1307, 1309. For the doctrine to apply, the new will must not have changed the testamentary purpose of the old will and must essentially repeat the same dispositive plans.

¶ Hauck argues that the October 27 Will is strikingly dissimilar to the October 30 Will and that, because the doctrine of dependent relative revocation therefore does not apply, the October 27 Will is void. However, she offers no authority for this type of reverse application of the doctrine. Further, the two Wills differ only as to the relative shares to be received by Hauck and by Seright and his siblings. Sisson's grants of $5,000 to the City of Lewistown, Montana ambulance service and $5,000 to each of three of her friends remain the same under both Wills and would not exist in intestacy. We conclude the District Court did not err in failing to invalidate the October 27 Will under the doctrine of dependent relative revocation.

¶ Seright further responds to Hauck's argument under this issue by stating that the validity of the October 27 Will was not a trial issue, that Will not having been challenged in these proceedings. He maintains that even if Sisson's mental condition rendered her subject to undue influence on October 27, 1992, no one has alleged undue influence as to the October 27 Will. In fact, in her original petition in the will contest, Hauck asked that the October 27 Will be admitted to probate.

¶ An order admitting a will to probate is appealable under Rule 1, M.R.App.P. Hauck's notice of appeal states that she is appealing from the final judgment entered on July 21, 1997, and from the order regarding post-trial motions entered August 26, 1997. As part of the order regarding post-trial motions, the District Court ordered Sisson's October 27 Will admitted to formal probate. We conclude that the court's admission of that Will into probate is an appealable order which is properly a subject of this appeal.

¶ Despite Hauck's position that the validity of the October 27 Will was not an issue at trial, she presented evidence at trial that the October 27 Will was prepared by Sisson's longtime attorneys, who, prior to and during the execution of the Will, carefully interviewed Sisson about her testamentary intent. Those attorneys preserved that interview on an audiotape, which was played for the jury at trial. The two attorneys who witnessed the October 27 Will both testified that they did not feel Sisson was being unduly influenced at the time she executed the Will, and the attorney who drafted the Will testified that he had no doubt that Sisson was competent when she executed it. There was no evidence at trial that Seright unduly influenced Sisson as to the October 27 Will.

¶ We hold that the court did not err in admitting the October 27, 1992 Will to probate.

Issue 4

¶ Did the court err in granting Seright his attorney fees and costs?

¶ In arguing that the District Court erred in awarding costs and attorney fees to Seright for defense of the will contest, Hauck relies on § 72-12-206, MCA. That statute provides:

> If the probate is revoked, costs, as provided in 25-10-201, but not attorney fees, must be paid by the party who resisted the revocation or out of the property of the decedent, as the court directs.

Hauck asserts that under this statute attorney fees are not included within the term "costs" and that there is no special statute authorizing payment of attorney fees from the assets of the estate in the unsuccessful defense of a will contest.

¶ **Seright acknowledges that under the above statute, attorney fees are not included within the term "costs." He points out, however, that § 72-3-632, MCA, specifically authorizes payment of reasonable attorney fees by the estate if the personal representative (in this case, Seright) defends a will contest in good faith.**

¶ **Section 72-3-632, MCA, states: "If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not, he is entitled to receive from the estate his necessary expenses and disbursements, including reasonable attorneys' fees incurred." In this case, there is no claim that the attorney fees are unreasonable.**

¶ **Hauck points out that she prevailed in the part of the action concerning Sisson's October 30, 1992 Will, and that under Seright's prevailing position, the IDS and Edward D. Jones accounts are not part of the estate. She argues that Seright's success in defending those transfers was not in his capacity as personal representative, but in his individual capacity.**

¶ **The fact remains, however, that as a significant part of this action Seright defended the October 30 Will under which he was personal representative of Sisson's estate. Under § 72-3-632, MCA, he is entitled to reasonable attorney fees for that effort, whether he was successful in defending on that claim or not. Hauck's claims under her various legal theories were factually intertwined. Additionally, if Seright had not defended the three transfers which the court and the jury upheld, the transferred property could have been determined to be part of the estate and Seright would have been remiss in his capacity as personal representative in not having included them therein.**

¶ We review an award of attorney fees to determine whether the trial court abused its discretion. *Matter of Estate of Stone* (1989), 236 Mont. 1, 4, 768 P.2d 334, 336. Here, we hold that the District Court did not abuse its discretion in awarding Seright his attorney fees.

## Issue 5

¶ Did the court err in failing to grant Seright's motion for directed verdict or motion for judgment notwithstanding the verdict?

¶ Seright contends there was not enough evidence that he exerted undue influence upon Sisson to allow the court to submit to the jury the issue of the validity of the October 30 Will. This Court's standard of review of a decision on judgment as a matter of law through either denial of a motion for directed verdict or denial of a motion for judgment notwithstanding the verdict, is the standard set forth under Issue 1 above: whether the evidence, viewed in a light most favorable to the nonmoving party, tends to establish the case alleged in the party's pleading. A judgment as a matter of law should be granted only if reasonable persons could not draw different conclusions from the evidence. *Wise*, 284 Mont. at 343, 943 P.2d 1310, 1314.

¶ In this case, Hauck established that Sisson executed two different wills within three days in October 1992. In one, Hauck would receive 40 percent of Sisson's $400,000 estate; in the other, Hauck would receive only $10,000 and Seright and his siblings were awarded the residue of the estate. In denying the motion for directed verdict, the District Court pointed to the evidence that Sisson vacillated and to her doctor's testimony that she had a poor memory. Hauck points out that Seright admitted at trial that in October 1992 Sisson was approximately 87 years old, could not make a consistent plan for her estate; was elderly enough and confused enough that she could have been unduly influenced by him at that time; and that he could have forced her to do what he wanted her to do.

¶ When viewed in a light most favorable to Hauck, the evidence tended to establish her case. Reasonable persons could have drawn different conclusions from the evidence. We hold, therefore, that the District Court did not err in failing to grant Seright's motion for directed verdict or for judgment notwithstanding the verdict.

¶ **Affirmed.**

/S/ J. A. TURNAGE

We concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ WILLIAM E. HUNT, SR.