#28647-SRJ
**2019 S.D. 37**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

In the Matter of the CERTIFICATION OF A QUESTION OF LAW FROM THE
UNITED STATES DISTRICT COURT, DISTRICT OF SOUTH DAKOTA,
SOUTHERN DIVISION, Pursuant to the Provisions of SDCL 15-24A-1, and
Concerning Federal Action Civ. 4:17-cv-04167-KES, Titled as Follows:

* * * *

THOMAS BRIGGS,                                    Plaintiff,

    v.

JUDITH BRIGGS,                                    Defendant.

* * * *

ORIGINAL PROCEEDING

* * * *

DANIEL R. FRITZ, II
MARY A. AKKERMAN
TIMOTHY R. RAHN of
Ballard Spahr LLP
Sioux Falls, South Dakota                 Attorneys for plaintiff and
                                                         non-moving party.


PAUL T. VAN OLSON
SHEILA S. WOODWARD of
Marlow, Woodward & Huff, Prof. LLC
Yankton, South Dakota                     Attorneys for defendant and
                                                         moving party.

* * * *

ARGUED ON
NOVEMBER 13, 2018
OPINION FILED **07/02/19**

#28647

JENSEN, Justice

[¶1.] On December 8, 2017, Thomas Briggs filed a complaint against his sister, Judith Briggs, in the United States District Court for the District of South Dakota, alleging claims for tortious interference with inheritance or expectancy of inheritance, breach of fiduciary duty, and negligence. The district court dismissed the claims for breach of fiduciary duty and negligence. The district court then certified the following question to this Court on the remaining cause of action.

**Whether South Dakota recognizes tortious interference with inheritance or expectancy of inheritance.**

[¶2.] In answer to the certified question from the district court, we decline to recognize a cause of action for tortious interference with inheritance or expectancy of inheritance.

**Background**

[¶3.] Thomas's federal complaint alleges that Thomas and Judith's parents, Elizabeth and Willard Briggs, each created a revocable living trust and will in 1995. Thomas attached a copy of Willard's trust to the complaint showing he and Judith were treated equally as beneficiaries, and he alleges on information and belief that he was also named as an equal beneficiary in Elizabeth's trust and will. Further demonstrating Willard's and Elizabeth's benevolent intent toward their children, Thomas alleges his parents deeded land they owned in Illinois to Thomas and Judith in equal shares, subject to a retained life estate.

[¶4.] In 1995, Willard gifted Judith approximately 395 acres of South Dakota agricultural land to assist her as she started in the farming and ranching

-1-

business.  Thomas did not receive a similar gift.  Thomas alleges that Elizabeth and Willard always intended their estate planning to include a later distribution to him to equalize the gift to Judith.

[¶5.]	In 1997, Willard passed away, and Elizabeth became trustee of Willard's trust.  According to Thomas's federal complaint, as Elizabeth's health declined, Judith developed a confidential relationship with her and became her primary caretaker.  Thomas further claims Judith began isolating Elizabeth from others and began to control Elizabeth's personal and financial decisions.  He identified that he last spoke to Elizabeth in 2006.

[¶6.]	Thomas alleges Elizabeth amended her trust on January 16, 2009, despite her declining health, and removed Thomas as a beneficiary.  She amended the trust a second time on January 3, 2012, removing Thomas's daughter as a beneficiary.  Elizabeth passed away on July 16, 2013.  Thomas claims that he was unable to participate in the funeral services because Judith failed to inform him of Elizabeth's passing.  He further claims he first learned of Elizabeth's death on approximately August 15, 2013, when he received a letter from Elizabeth's attorney explaining that Elizabeth had died and prior to her death had disinherited him.  This letter also provided Thomas with notice of the time allowed for commencing judicial proceedings under SDCL 55-4-57(a)(2).[1]

---

1.	SDCL 55-4-57(a)(2) provides:

> A judicial proceeding to contest whether a revocable trust or any amendment thereto, or an irrevocable trust was validly created may not be commenced later than the first to occur of:
> . . .

(continued . . .)

[¶7.]     More than eighteen months after Elizabeth's death, Thomas filed a petition in state circuit court challenging the trust amendments. He argued the amendments were invalid because Elizabeth lacked testamentary capacity and was unduly influenced by Judith who was a beneficiary and trustee. In particular, he asserted Elizabeth was unable to read either of the amended trusts when she signed them at ages 89 and 92, respectively, due to her poor eyesight. Thomas also alleged that Judith breached her fiduciary duties as trustee; however, Thomas did not name Judith as a party defendant or commence an action against her in her individual capacity.

[¶8.]     After the circuit court dismissed Thomas's petition as untimely under SDCL 55-4-57(a), Thomas appealed to this Court. We affirmed, determining that the petition was time barred. *See In re Elizabeth A. Briggs Revocable Living Trust* (*Briggs I*), 2017 S.D. 40, ¶ 13, 898 N.W.2d 465, 471. We also held that the circuit court lacked *in personam* jurisdiction to review the claim that Judith breached her fiduciary duty because Thomas did not commence the action against Judith in her individual capacity or move to join her as a party defendant. *Id.* ¶ 14. Thomas subsequently filed the complaint pending before the federal district court, alleging, among other claims, a claim for tortious interference with inheritance or expected inheritance.

---

(. . . continued)

(2) Sixty days after the trustee, trust advisor, trust protector, or the settlor sent the person who is contesting the trust a copy of the trust instrument and a notice informing the person of the trust's existence, of the trustee's name and address, and of the time allowed for commencing a proceeding[.]

**Decision**

[¶9.] Tortious interference with inheritance, or at least a version of it, was recognized in Georgia in 1915. *Mitchell v. Langley*, 85 S.E. 1050, 1053 (Ga. 1915). However, most cases discussing the tort arose after the Restatement (Second) of Torts recognized the cause of action in 1979. Restatement (Second) of Torts § 774B (1979). The Restatement explains the tort as: "One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift." *Id.* Unlike probate challenges, the tort exists between the intended beneficiary and the alleged tortfeasor outside of the decedent's estate. *Id.* cmt. c. *See In re Meyer's Estate*, 69 S.D. 339, 341, 10 N.W.2d 516, 517 (1943) (indicating that a will dispute is in the interest of the estate).

[¶10.] Generally, the tort requires proof of five elements: "(1) the existence of an expectancy; (2) defendant's intentional interference with the expectancy; (3) conduct that is tortious in itself, such as fraud, duress, or undue influence; (4) a reasonable certainty that the expectancy would have been realized but for the interference; and (5) damages." *In re Estate of Ellis*, 923 N.E.2d 237, 241 (Ill. 2009); *accord Firestone v. Galbreath*, 616 N.E.2d 202, 203 (Ohio 1993). The tort allows for damages in the form of compensation from the wrongdoer for the loss of an expected inheritance and punitive damages to punish the wrongdoer for the tortious conduct. Restatement (Second) of Torts § 774B (1979).

[¶11.] In response to the district court's certified question, Thomas urges us to adopt a cause of action for tortious interference of inheritance or expected

inheritance.  As support, he cites cases from other jurisdictions that have adopted the tort.  Judith maintains the tort is unnecessary.  She argues that existing South Dakota law provides an adequate remedy for any of the wrongs asserted by Thomas.  She also directs this Court to numerous cases refusing to adopt the tort.

[¶12.]    The cases cited by Thomas and Judith reflect abundant law on the issue—including the reasons for and against adopting the tort.  Many of those decisions have been issued by intermediate appellate courts or by federal courts applying state law and, at times, produce inconsistent results, even within the same jurisdiction.  *Compare In re Estate of Legeas*, 258 Cal. Rptr. 858 (Cal. Ct. App. 1989) (recognizing the tort), *with Jones v. Welchner*, No. H029511, 2007 WL 2751429 (Cal. Ct. App. Sept. 21, 2007) (declining to recognize the tort).  *Compare Bocian v. Bank of America*, No. CV064019877, 2006 WL 3759305 (Conn. Super. Ct. Dec. 6, 2008) (recognizing the tort), *with Moore v. Brower*, No. X10UWYCV054010227, 2006 WL 2130385 (Conn. Super. Ct. June 14, 2006) (declining to recognize the tort). *Compare In re Green*, No. 173335, 1996 WL 33360648 (Mich. Ct. App. Aug. 16, 1996) (recognizing the tort), *with Dickshott v. Angelocci*, No. 241722, 2004 WL 1366001 (Mich. Ct. App. June 17, 2004) (declining to follow *In re Green* as not binding and not persuasive).

[¶13.]    We, therefore, focus on jurisdictions with decisions from the state's highest court.  Our review shows that only a small number of the highest courts in other states have adopted the tort without qualification or limitation.[2]  These courts

---

2.    At least three state supreme courts have adopted the tort but have not clarified its scope.  *Bohannon v. Wachovia Bank & Tr. Co.*, 188 S.E. 390, 394

(continued . . .)

allow the claim to proceed regardless of other available remedies so long as the plaintiff has sufficiently pleaded the requisite elements. According to the Iowa Supreme Court, the tort is "an independent cause of action for the wrongful interference with a bequest[.]" *Frohwein v. Haesemeyer*, 264 N.W.2d 792, 795 (Iowa 1978); *accord Barone v. Barone*, 294 S.E.2d 260, 264 (W. Va. 1982). Maine likewise treats the tort independently from a will or trust dispute, and in fact, allows a cause of action "even before the testator has died." *Plimpton v. Gerrard*, 668 A.2d 882, 886 (Me. 1995). Notably, the Oregon Supreme Court remarked that "[a] tort claim does not become a will contest simply because it arises out of facts relating to the making or unmaking of a will." *Allen v. Hall*, 974 P.2d 199, 204 (Or. 1999) (en banc). Therefore, a plaintiff need not first bring a probate challenge to proceed in tort. *Frakes v. Nay*, 295 P.3d 94, 114 (Or. Ct. App. 2012).

[¶14.] Conversely, a number of decisions from the highest courts of other states have unequivocally declined to adopt a cause of action for tortious interference with inheritance or expected inheritance. The Virginia Supreme Court declined to adopt the tort, reasoning that "[a] person who is mentally competent and

---

(. . . continued)

(N.C. 1936); *Firestone*, 616 N.E.2d at 203; *Marshall v. De Haven*, 58 A. 141, 142 (Pa. 1904). In those states, however, the lower appellate courts have either adopted elements or otherwise indicated when such cause of action is permissible. *Murrow v. Henson*, 616 S.E.2d 664, 669 (N.C. Ct. App. 2005) (must exhaust probate remedies); *Roll v. Edwards*, 805 N.E.2d 162, 169 (Ohio Ct. App. 2004) (tort claim is not ripe for review if adequate relief is available through probate proceedings); *Estate of Hollywood v. First Nat'l Bank of Palmerton*, 859 A.2d 472, 477–78 (Pa. Super. Ct. 2004) (adopted elements, limited the tort to "demonstrable interference with the testamentary scheme the decedent had sought to create by making changes in an existing will[,]" and held tort does not apply to inter vivos transfers).

not subject to undue influence may make any disposition of his property he chooses during his lifetime or by will at his death." *Economopoulos v. Kolaitis*, 528 S.E.2d 714, 720 (Va. 2000). Similarly, the tort is not actionable in New York or Tennessee, according to those states' highest courts.[3] *Vogt v. Witmeyer*, 665 N.E.2d 189, 190 (N.Y. 1996); *Stewart v. Sewell*, 215 S.W.3d 815, 827 (Tenn. 2007).

[¶15.] The Nebraska Supreme Court has twice indicated it will not adopt the tort as a valid cause of action. *Litherland v. Jurgens*, 869 N.W.2d 92, 99 (Neb. 2015); *Manon v. Orr*, 856 N.W.2d 106, 111 (Neb. 2014). This is in part because of the court's general preference that disputes pertaining to wills and trusts be resolved in probate. *Litherland*, 869 N.W.2d at 97. The court also expressed concern that "adoption of the tort would duplicate theories of recovery[.]" *Id.*

[¶16.] The Arkansas Supreme Court, after examining the reasons for and against adopting the tort, declined to allow the cause of action because "there are sufficient other avenues, short of creating a new cause of action, that serve to remedy the situation for plaintiff[.]" *Jackson v. Kelly*, 44 S.W.3d 328, 331 (Ark. 2001) (quoting *Goff v. Harold Ives Trucking Co., Inc.*, 27 S.W.3d 387, 391 (Ark. 2000)). The court also cautioned against "creating a tort that would only lead to duplicative litigation, encouraging inefficient relitigation of issues better handled within the context of the core cause of action." *Id.*

---

3. Although multiple plaintiffs have asked New York appellate courts and federal district courts to re-examine the state's position on the issue, no New York court has allowed the claim to proceed. *See, e.g., Knapp v. Maron*, 14-CV-10121, 2016 WL 2851563, at *4 (S.D. N.Y. May 12, 2016); *O'Sullivan v. Hallock*, 101 A.D.3d 1313, 1314 (N.Y. App. Div. 2012).

[¶17.]     For years, it appeared as if the tort was actionable in Texas. However, in 2017, the Texas Supreme Court rejected "[a] handful of Texas courts of appeals" decisions recognizing tortious interference with inheritance as a cause of action. *Kinsel v. Lindsey*, 526 S.W.3d 411, 422 (Tex. 2017). The supreme court highlighted that it had not yet addressed the issue, and the "viability" of the tort in Texas "is an open question." *Id.* at 423. In considering the cause of action, the court took into account "the existence and adequacy of other protections." *Id.* at 424. Ultimately, the court rejected the tort, declining to enlarge its "body of tort law" to adopt the cause of action when "the law provides other avenues for relief." *Id.* at 425–26.

[¶18.]     In between the two ends of the spectrum, decisions from other state supreme courts have either adopted the tort in a limited fashion or declined, on the facts before those courts, to adopt it. For example, the Idaho Supreme Court declined to adopt the tort under the facts, indicating, "Assuming, without deciding, that this [c]ourt would recognize the tort of interference with inheritance, [plaintiff] would be required to prove that he was deprived of an inheritance." *Losser v. Bradstreet*, 183 P.3d 758, 764 (Idaho 2008). Similarly, the Montana Supreme Court acknowledged the tort but declined to "address whether tortious interference with an expectancy will be recognized as a cause of action" because there was no evidence to support the claim in the underlying case. *Hauck v. Seright*, 964 P.2d 749, 753 (Mont. 1998).

[¶19.]     In contrast, the Massachusetts Supreme Court adopted the tort, but it adopted it only "in certain limited conditions." *Labonte v. Giordano*, 687 N.E.2d 1253, 1255 (Mass. 1997). First, the interference must be intentional and unlawful.

*Id.* Second, "[t]he plaintiff must have a legally protected interest." *Id.* Third, "[t]he plaintiff must show that the defendant's interference acted continuously on the donor until the time the expectancy would have been realized." *Id.*

[¶20.]     The Florida Supreme Court also adopted the tort but required plaintiffs to first exhaust probate remedies. *DeWitt v. Duce*, 408 So. 2d 216, 218 (Fla. 1981). The tort action will be considered an impermissible collateral attack on the probate proceeding "whenever the plaintiff has failed to pursue an adequate remedy in the probate proceedings." *Id.* Therefore, "if adequate relief is available in a probate proceeding, then that remedy must be exhausted before a tortious interference claim may be pursued." *Id.* When, however, tortious interference "effectively preclude[s] adequate relief in probate court," the plaintiff may bring a later action for damages. *Id.* at 219.

[¶21.]     When the Illinois Supreme Court adopted the tort and examined its scope, it recognized there may be evidentiary overlap between the tort action and a will contest.[4] *Estate of Ellis*, 923 N.E.2d at 241. In a more recent case discussing the tort action, the court stated, "This court refused to allow such plaintiffs to maintain a tort action that would have the practical effect of invalidating a will that had been validated through the Probate Act." *Bjork v. O'Meara,* 986 N.E.2d 626, 633 (Ill. 2013). Therefore, and to prevent plaintiffs from getting "a second bite of

_____

4.     *See also Wilson v. Fritschy*, 55 P.3d 997, 1005 (N.M. Ct. App. 2002) (recognizing the tort may create difficult issues involving the impact on prior estate settlements and collateral attacks on probate decrees and other prior, valid court determinations).

the apple," the court rejected the tort "where plaintiffs chose not to avail themselves of a will contest remedy." *Estate of Ellis*, 923 N.E.2d at 241–42.

[¶22.]     With these cases in mind, we now consider the tort in the context of South Dakota's existing statutes and case law. We initially consider SDCL 43-3-6, which provides that "[a] mere possibility, such as the expectancy of an heir apparent, is not deemed an interest of any kind." Under this long-standing statute, an heir has no interest in, or right to inherit, property of another prior to that person's death. Therefore, a testator may, up to the moment of death, revise and amend the disposition of the estate, and a prospective beneficiary's right to inherit depends on the decedent's final testamentary disposition in favor of that beneficiary. However, the statute does not directly address whether a third party's intentional and wrongful interference with an intended disposition may create a compensable loss in tort to an expectant heir or beneficiary as against the wrongdoer.[5]

[¶23.]     More importantly, for the purpose of resolving the question before this Court, we recognize that our Legislature has created a broad statutory scheme for

---

5.     Courts recognizing the tort of intentional interference with inheritance generally require proof of more than a "mere possibility" of an expected inheritance in order to recover. Instead, there "must be proof amounting to a reasonable degree of certainty that the bequest or devise would have been in effect at the time of the death of the testator or that the gift would have been made inter vivos if there had been no such interference." Restatement (Second) of Torts § 774B cmt. d (1979). *See also Frohwein*, 264 N.W.2d at 795 (recognizing that "there existed a strong probability that this intention would have been carried out but for the wrongful acts of the defendant there exists a cause of action"); *Plimpton*, 668 A.2d at 885 (providing that "there can be recovery only for an inheritance or gift that the other would have received but for the tortious interference of the actor").

the formulation and administration of wills and trusts. One core principle attendant to these laws is the freedom of disposition. It is well settled that "a testator has the privilege and right to dispose of his property as he chooses within limits and in the manner fixed by statute." *In re Estate of Burk*, 468 N.W.2d 407, 412 (S.D. 1991). "The law does not require that he recognize his relatives equally or at all." *Id.*

[¶24.] When, however, a third person wrongfully infringes upon the testator's intent in the creation or modification of a will or trust, that infringement affects the person's intended disposition of his or her property. In those situations, our laws provide parties a means to challenge the validity of the testamentary documents. *See, e.g.,* SDCL 29A-3-407; SDCL 55-4-57; *see also In re Donald Hyde Trust*, 2014 S.D. 99, 858 N.W.2d 333 (discussing the requirements to prove undue influence); *In re Estate of Long*, 2014 S.D. 26, 846 N.W.2d 782 (discussing the requirements to prove lack of testamentary capacity and undue influence); *In re Estate of Weickum*, 317 N.W.2d 142 (S.D. 1982) (discussing the showing to prove fraud in the inducement of a will). Our law also provides that "[a] person who willfully fails to deliver a will is liable to any person aggrieved for any damages that may be sustained by the failure." SDCL 29A-2-516.

[¶25.] Notwithstanding, Thomas claims that the tort is necessary because our traditional trust and probate remedies are inadequate to address every instance of potential wrongful conduct by a third party that may interfere with an expected inheritance. As an example, Thomas speculates that our existing laws would not remedy "wrongful disparaging statements that do not rise to the level of a false

statement in a probate contest[;] beneficiary conduct that wrongfully isolates a testator from other beneficiaries so that the testator disinherits the isolated beneficiaries[;] and other controlling behavior that interferes with inheritance rights, but is not directed specifically to the invalidation of a testamentary document."

[¶26.] On the contrary, the conduct described by Thomas may very well be relevant in a proceeding challenging a testamentary document. "[A]ny evidence which shows susceptibility, opportunity, disposition to use, or a result indicative of undue influence is admissible." *In re Estate of Melcher*, 89 S.D. 253, 262, 232 N.W.2d 442, 447 (1975) (quoting *In re Estate of Blake*, 81 S.D. 391, 398, 136 N.W.2d 242, 246 (1965)). Additionally, evidence of the conduct described by Thomas may also support a determination that a confidential relationship existed under existing law which can, in turn, create a presumption of undue influence.[6] *In re Estate of Duebendorfer*, 2006 S.D. 79, ¶ 32, 721 N.W.2d 438, 446–47. We have stated that a confidential relationship may arise when "a decedent has placed trust and confidence in the integrity and fidelity of another." *Id.* ¶ 27. We have previously noted that courts will examine confidential relationships "with close judicial scrutiny to [e]nsure the transactions that transpired in conjunction with the confidential relationship are fair and aboveboard." *In re Estate of Elliott*, 537 N.W.2d 660, 663 (S.D. 1995).

---

6. The factors considered in determining whether a confidential relationship may exist include the "amount of time the beneficiary spent with the testator, whether the beneficiary handled many of the personal or business affairs of the testator, and whether the testator ever sought the advice of the beneficiary." *In re Estate of Dokken*, 2000 S.D. 9, ¶ 30, 604 N.W.2d 487, 496.

[¶27.]       Thomas, however, also argues that the tort is necessary to remedy inter vivos transfers of property influenced by wrongful conduct that depletes the assets of an individual or a trust prior to death. He contends "[t]he desired remedy, punishment, and deterrence of wrongful *inter vivos* transfers can only be accomplished in tort." We disagree.

[¶28.]       Current remedies exist when inter vivos transfers of property arise from wrongful conduct by a third party. *See* SDCL 55-1-7 to -10. In particular, under SDCL 55-1-8, "[o]ne who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust *or other wrongful act*, is, unless he has some other and better right thereto, an implied trustee of the thing gained for the benefit of the person who would otherwise have had it." (Emphasis added.) Further, SDCL 55-1-11 broadly permits a court to establish and declare an implied or constructive trust based on "the facts and circumstances of a transaction[,]" *DFA Dairy Fin. Servs., L.P. v. Lawson Special Tr.*, 2010 S.D. 34, ¶ 32, 781 N.W.2d 664, 672. *See McFarland v. McFarland*, 470 N.W.2d 849, 851 (S.D. 1991).

[¶29.]       The availability of a constructive trust as a remedy to a wrongful inter vivos transfer led the Texas Supreme Court to reject the tort of intentional interference with inheritance. *Kinsel*, 526 S.W.3d at 424. The court found "no compelling reason to consider a previously unrecognized tort if the constructive trust proved to be an adequate remedy." *Id.* Likewise, we are not convinced on the record before us that our existing constructive trust remedies are inadequate to address wrongful inter vivos transfers.

[¶30.]    Thomas next urges us to adopt the tort because *this Court* has previously adopted other common law torts from the Restatement (Second) of Torts. In particular, he cites to our recognition of the tort of intentional interference with prospective contracts.[7]  Our adoption of the tort of intentional interference with prospective contractual relations arose in part because there was a lack of other remedies available to redress such wrongs in the business context.  *See Tibke v. McDougall*, 479 N.W.2d 898, 908 (S.D. 1992); *accord Landstrom v. Shaver*, 1997 S.D. 25, ¶ 81, 561 N.W.2d 1, 18; *Gruhlke v. Sioux Empire Fed. Credit Union, Inc.*, 2008 S.D. 89, ¶ 14, 756 N.W.2d 399, 407-08.  As compared to the loss of an expected inheritance, the pursuit of a contractual or business relationship differs because it often involves upfront economic costs that could never be recouped absent a claim for wrongful interference with the prospective contractual relationship.

[¶31.]    Finally, Thomas contends we should adopt the tort of intentional interference with inheritance because the short statute of repose for challenging the validity of a trust under SDCL 55-4-57 makes it impractical, or impossible in some instances, to discover wrongful interference before the statutory period expires. SDCL 55-4-57 requires that a proceeding to challenge a trust be commenced within the shorter of either: (1) "[o]ne year after the settlor's death" or (2) sixty days after proper notice is given to the person seeking to challenge the trust.

---

7.    The comments indicate the tort of intentional interference with a gift or inheritance "represents an extension to a type of noncontractual relation of the principle found in the liability for intentional interference with prospective contracts stated in § 766B."  Restatement (Second) of Torts § 774B cmt. a (1979).

[¶32.] Admittedly, sixty days, even after notice, is an abbreviated period to commence an action challenging a trust. Nonetheless, we have recognized that this repose period is a public policy decision of the Legislature intended to effectuate "the expeditious distribution of the trust property following the settlor's death." *See Briggs I*, 2017 S.D. 40, ¶ 9, 898 N.W.2d at 469. Thomas suggests the tort action would not run afoul of this legislative policy because the claim would lie against the individual wrongdoer rather than the trust. However, his suggestion, alone, does not lead us to conclude that the expeditious administration of trusts prioritized by the Legislature would be unaffected by recognizing the tort. Most importantly, Thomas makes no claim that he was unable to challenge the trust in this case because of the shortened repose period, and he only hypothesizes that a future litigant could be denied a remedy because of the repose period.

[¶33.] Having considered the decisions from other jurisdictions and other policy considerations under existing law in this State, we are not persuaded to adopt a cause of action for intentional interference with inheritance and expand tort liability to the already existing panoply of remedies available to estate litigants in South Dakota. South Dakota law provides redress for the allegations asserted by Thomas in his federal complaint, and we believe it would be improvident to expand tort liability without a clear demonstration that a litigant has no adequate remedy at law. We, therefore, answer the certified question in the negative.

[¶34.] GILBERTSON, Chief Justice, and KERN and SALTER, Justices, concur.